## In re MUNCIE PULP CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1907.)

### No. 70.

**1. BANKRUPTCY—LIENS—CONTRACT FOR SALE OF TIMBER.**

A contract for the sale of standing timber to be cut and removed by the purchaser required a portion of the purchase price to be paid in advance and the remainder in annual installments, and expressly provided that the purchaser should at no time cut and remove a greater quantity of timber than it had already paid for, and that if it should at any time do so it would at once pay for the same. Before the payment of all the installments the purchaser was adjudicated a bankrupt. *Held*, that the contract gave the seller a lien on the timber remaining uncut for the price thereof, which was enforceable as against the trustee.

**2. SAME—RECEIVERS.**

 A stipulation by a receiver for a bankrupt corporation to enter the appearance of such corporation in a suit brought against it does not bind him to enter his own appearance as receiver.

Petition to Review Order of the District Court of the United States for the Southern District of New York.

See 139 Fed. 546, 71 C. C. A. 530.

This cause comes here upon petition to review an order of the District Court which provided: (1) That the bank and Mrs. Kinney (petitioners) be stayed from further prosecution of an action instituted against the bankrupt corporation in the circuit court of Arkansas. (2) That the said parties consent to the dissolution of an attachment issued in said cause and levied on certain property hereinafter referred to. (3) That the fund derived from the sale of the attached property be turned over to the trustee in bankruptcy without prejudice to any rights which the petitioners might have against such fund.

Caruthers Ewing, Russell & Winslow, H. C. Williamson, Jr., and Chas. T. Coleman, for petitioners.

A. I. Elkus, James N. Rosenberg, Robert P. Levis and James, Schell & Elkus, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. On June 21, 1901, one Cissna, the owner of timber lands in Arkansas, entered into a written contract with the Muncie Pulp Company, a New York corporation, for the sale to it of certain standing timber, the contract providing that all the timber within a certain specified area should be cut and removed within two years, all within a certain other specified area within five years, and the remaining timber (located in another specified area of 2,000 acres) within seven years. The consideration of the sale and transfer is stated to be the sum of $35,000, $7,000 in cash on signing the contract, and four notes of even date therewith, each for $7,000, with 5 per cent. interest, due one, two, three, and four years from date. It is apparent from this provision that one-fifth of the consideration was to be paid before any timber was cut and removed, and that the entire consideration was to be paid three years before the time limited for cutting and removing. In the affidavits it is suggested that it was expected that the rate at which the timber could be cut and removed would be such that each installment when paid would be sufficient to cover the timber cut and removed down to the time when the next installment might fall due. But it is not necessary to refer to any affidavits or other testimony outside of the contract; a special clause makes the intent of the parties entirely clear. It is expressly provided that—

"if at any time the said party of the second part [the pulp company] shall cut and remove from the said property a larger amount of timber than the proportionate value of the same has been already paid for, that it will immediately pay to the party of the first part [Cissna] that proportion of the purchase price covering the said timber; that at no time shall they cut and remove a greater amount of timber than they have already paid for under this contract, it being the intention hereby that whenever any timber is cut and removed from the said property, that it shall be at all times paid for in cash."

The cash installment of $7,000 was paid, and the company entered upon the land and proceeded to cut and remove timber. The two notes

maturing in 1902 and 1903 were paid. The notes due in 1904 and 1905, respectively, are still unpaid, and have been assigned by Cissna to the Corn Exchange Bank and Mrs. Kinney, respectively. The rate at which the timber was cut and removed seems to have been greater than was contemplated, so that by July, 1904, a greater amount had been removed than the company had already paid for; the precise figures are not given, but it is stated that about three-fourths of the entire amount of timber standing when the contract was made had been removed, while, by reason of default in payment of the note due June 21, 1904, only three-fifths of the consideration had been paid. The credit of the company being apparently good, the owner of the timber had not been careful to put a stop to the continued cutting; payment of the 1904 note would have paid for all and covered a large part of future cuttings.

On July 30, 1904, petition in involuntary bankruptcy against the pulp company was filed in the Southern District of New York; on August 3, 1904, a receiver was appointed, who immediately took possession of the bankrupt's property; and on August 4th order was entered adjoining all persons from levying on the bankrupt's property or interfering with the possession of the receiver. The company was adjudged a bankrupt on December 17, 1904, and the receiver was appointed trustee in March, 1905. On August 19, 1904, these petitioners (the bank and Mrs. Kinney), having knowledge of the bankruptcy proceedings, brought an action in the Circuit Court of Arkansas upon the two unpaid notes, claiming a vendor's lien on the unremoved timber, and an attachment was issued and levied thereon.

While this action was pending in the month of September, 1904, because a particularly advantageous sale of the unremoved timber could be made, the receiver and the petitioners made an agreement, which was ratified, approved, and confirmed by the bankruptcy court, whereby it was provided that timber attached should be sold and the proceeds of the sale deposited in a Memphis savings bank, to stand in lieu of the property attached. The timber was cut and sold, realizing $24,500, of which $16,000, a sum sufficient to meet the notes and interest, was deposited in the Memphis bank, while $8,500 was taken by the trustee. Thereafter, in August, 1905, the trustee moved that petitioners be required to dissolve the attachment, and that the funds in the Memphis bank be turned over to him subject to any rights or liens that the attaching parties might be able to establish in the bankruptcy proceedings then pending.

At the time this agreement was made and ratified by the bankruptcy court, the situation was as follows: The petitioners, as assignees, had succeeded to all the rights of Cissna. As to the timber which had been cut and removed in excess of payments already made, there was a question whether or not the seller had a vendor's lien for its price upon what timber was left. That question need not now be considered; it will be disposed of in the appropriate tribunal, and may or may not thereafter be brought here for review.

As to the timber not yet cut and removed, the seller, under the contract was entitled, if he chose, to hold the same and prevent its re-

moval by the company until it should pay him cash for whatever it might seek to remove. The general language, "sale and transfer," is clearly qualified by the special clause, and the Muncie Pulp Company had no right, against the wish of the seller, to cut and remove timber in excess of the amount of payment; it was on his land, and was to be paid for before it was cut and removed. Neither the receiver nor the trustee had any better title to it, or any greater right to cut and remove it, than the bankrupt had. In re New York Economical Co., 49 C. C. A. 133, 110 Fed. 514.

Of the proceeds of the sale under the agreement, approved by the court, the profit over and above all possible claims of the seller belongs to the trustee, representing a profit which has come to the bankrupt's estate under one of the bankrupt's contracts. The $16,000 represents two items, the respective amounts of which are not yet determined. The first is the value, at contract rates, of the timber cut and removed, with Cissna's assent, in excess of payments before failure. As to that some court must ascertain the precise amount and determine whether such amount is a lien upon the $16,000 which now represents the timber not cut and removed at the date of failure. The residue of the $16,000 belongs to the seller (or his assignees), representing, as it does, the timber which he had not parted with at the time of the failure, which he was entitled to hold until he received cash for it, and which he parted with only in reliance upon the agreement with the receiver, which the bankruptcy court approved. The appropriate court to ascertain these respective amounts and to determine the question above set forth is the bankruptcy court in the Southern District of New York. The attachment, being sued out and levied subsequent to the appointment of the receiver and with knowledge of his appointment, was void; indeed, the petitioners seem not to ground their contention upon the attachment itself, but upon a single clause of the agreement with the receiver. That clause reads as follows:

"An order shall be entered in the case now pending in the circuit court of Mississippi county, Arkansas, dismissing the attachment, and appearance for the Muncie Pulp Company shall be entered therein."

This, petitioners contend, was an agreement by the receiver to appear in the Arkansas court and thus submit the controversy to which he thereby became a party to the arbitrament of that tribunal. We do not so read the clause; it provides only for the appearance of the Muncie Pulp Company, and it would be a very strained construction which might find in it any agreement that the trustee himself, who represents not only the bankrupt company, but all its creditors as well, should also appear.

The order of the District Court is therefore affirmed.