## THOMAS v. WOODS et al.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1909.)

No. 2,914.

1. BANKRUPTCY (§ 440*)—APPEAL AND REVISION OF PROCEEDINGS—MODE OF REVIEW.

The petition of a trustee in bankruptcy, filed in the bankruptcy court, to have certain adverse claims and liens on property belonging to the estate declared void, and for a sale of the property free and clear of the same, has all the elements of a suit in equity, and the decision therein is reviewable by the Circuit Court of Appeals on appeal, under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 293*)—JURISDICTION OF COURTS—PROPERTY IN OTHER JURISDICTIONS.

On the filing of a petition in bankruptcy, all property held by or for the bankrupt is brought within the custody of the court of bankruptcy, and upon adjudication that court is vested with jurisdiction to determine all liens or interests affecting it, which jurisdiction is coextensive with the United States.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 413; Dec. Dig. § 293.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

3. BANKRUPTCY (§ 3*)—CONSTITUTIONAL PROVISIONS—UNIFORMITY OF ACTS.

The constitutional requirement that a bankruptcy law shall be uniform throughout the United States means no more than that it shall by its terms be applicable alike to all of the states, and does not require uniformity in its operation on the varying rights of debtor and creditor under the laws of the several states. Such provision has no bearing on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the right of dower of a bankrupt's wife, which depends entirely on the state laws.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 1; Dec. Dig. § 3.*]

4. BANKRUPTCY (§ 143*) — DOWER RIGHTS OF BANKRUPT'S WIFE — LAW GOV-ERNING.

The right of a bankrupt's wife to dower in lands owned by him is governed by the laws of the state in which the land is situated, and is not affected by the right of homestead and exemption given by the law of his domicile.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 217; Dec. Dig. § 143.*]

5. DOWER (§ 2*)—NATURE OF ESTATE—MISSOURI STATUTE.

Under Rev. St. Mo. §§ 2933, 2946 (Ann. St. 1906, pp. 1690, 1698), a wife is entitled to dower in lands acquired by the husband in that state, unless she has released the same, without regard to whether the parties are residents or nonresidents.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 4, 5; Dec. Dig. § 2.*]

6. BANKRUPTCY (§ 143*) — DOWER RIGHTS OF BANKRUPT'S WIFE — LAW GOV-ERNING.

Bankruptcy acts are intended to deal only with the property of the debtor, which is subject to his debts and cannot affect his wife's dower interest, which by the law of the state can neither be alienated nor extinguished by him nor seized by his creditors. Bankr. Act July 1, 1898, c. 541, § 8a, 30 Stat. 549 (U. S. Comp. St. 1901, p. 3425), providing that the death of a bankrupt shall not abate the proceedings, which shall be conducted in the same manner as though he had not died, "provided that in case of death the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence," applies by its terms only in case of the bankrupt's death, and in that case the proviso, inserted out of an abundance of caution, is not intended to restrict the widow's dower rights, but to preserve such rights as may have been rendered doubtful by the prior proceedings, and where the bankrupt is still living such proviso does not prevent his wife from asserting her inchoate right of dower in his lands in accordance with the laws of the state in which they are situated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 217; Dec. Dig. § 143.*]

Riner, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Kansas.

In the matter of the estate of William E. Thomas, bankrupt. From an order made on the cross-petition of Frank E. Lewis, trustee, Kate S. Thomas appeals. Reversed.

The Kansas City Coal & Coke Company was a corporation organized under the laws of Kansas by Charles J. Devlin and William E. Thomas, who held its entire capital stock. Its principal place of business was in Kansas City, Mo., where it maintained extensive coal yards situated upon the real property involved in this proceeding. The title to the property was taken in the name of Devlin and Thomas, each taking an undivided one-half interest. The corporation, Devlin, and Thomas have been severally adjudged bankrupts in the United States District Court for the District of Kansas, and their estates are now in the hands of trustees duly appointed in those proceedings. The trustee of the corporation, William S. Woods, filed a petition in the court of bankruptcy against the other trustees and parties claiming under Devlin and Thomas, alleging that the corporation was in fact the owner of the real

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property, having paid the full consideration therefor, and that the title was taken in the name of Devlin and Thomas, as above mentioned, in trust for it. Devlin and Thomas, before they were adjudged bankrupts, made several conveyances of the lots, which are charged in the petition to have been given in fraud of the bankruptcy law. Mary A. J. Devlin, another of the defendants, is the wife of Charles J. Devlin, and it is alleged that she claims rights of dower in the property, the title to which stood in the name of her husband. The relief asked in the petition is that a decree be entered establishing the title of Woods as trustee, and adjudging that the defendants have no right, title, or interest in the property, and directing its sale, free and clear of all liens and claims whatsoever. The defendant Reeves, as trustee in bankruptcy for Charles J. Devlin, filed his answer, claiming title to the property, as did also Frank E. Lewis, as trustee in bankruptcy for W. E. Thomas. Lewis also filed a cross-bill, asking that his title to the property standing in the name of Thomas be established by judgment of the court. It was further averred in the cross-bill that the appellant here, Kate S. Thomas, the wife of W. E. Thomas, had commenced a suit in the state courts of Missouri to have her contingent right of dower in the property standing in the name of her husband adjudged and established, thereby clouding the title to the property and impairing its value as an asset of the estate. An injunction was asked restraining the further prosecution of this suit. Thereupon a citation was issued to Mrs. Thomas, requiring her to show cause why the injunction should not be granted. She appeared specially, and filed a plea denying the jurisdiction of the court, either over her person or the subject-matter of the controversy. This plea was heard and overruled. She then answered, again challenging the jurisdiction of the court, but setting up her claim of dower, and asking that, if the court should hold that it had jurisdiction, her dower interests might be preserved. The matter was heard upon this answer and the cross-bill, without the taking of evidence, and it was adjudged that the defendant Kate S. Thomas had no right to an inchoate dower interest, or otherwise, in any of the property mentioned in the cross-bill, and a permanent injunction was issued restraining her from further prosecuting the action in the state court. Against this decree Mrs. Thomas sued out the present appeal.

Inghram D. Hook (W. W. Hooper, on the brief), for appellant.

Denton Dunn (Charles Blood Smith, Henry D. Ashley, and William S. Gilbert, on the brief), for appellees.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

AMIDON, District Judge (after stating the facts as above). At the outset we are confronted with the question which has become a part of nearly every bankruptcy cause in an appellate court, namely: Should the review have been sought by appeal or petition? The confusion existing on this subject has been frequently confessed by the courts. In re McMahon, 147 Fed. 684, 77 C. C. A. 668; Coder v. Arts, 213 U. S. 223, 232, 29 Sup. Ct. 436, 53 L. Ed. 772. The classification of matters in bankruptcy as "proceedings in bankruptcy" and "controversies arising in bankruptcy proceedings" is vague and in actual application has bewildered the courts and the legal confession. It is quite manifest that, when the decision of a trial court in a "bankruptcy proceeding" is brought under review in an appellate court, it presents a "controversy," and of necessity this is also a "controversy arising in a bankruptcy proceeding." The phrases, therefore, upon which this classification is based, are tautological. Again, the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St.

1901, p. 3418]) itself uses the phrase "proceedings in bankruptcy" in a double sense. Section 23 provides as follows:

"The United States Circuit Court shall have jurisdiction of all controversies at law and in equity as distinguished from proceedings in bankruptcy between trustees as such, and adverse claimants, concerning the property acquired or claimed by the trustees," etc.

Here the term "proceedings in bankruptcy" embraces "controversies arising in bankruptcy proceedings," as well as "bankruptcy proceedings proper," and sets them both over against plenary suits between trustees and adverse claimants (instituted by bill or complaint, with subpoena or summons), touching rights or property not in the custody of the court. In section 24b, however, the term "proceedings in bankruptcy," as construed by the courts, has been given a narrower meaning, and has been set over against "controversies arising in bankruptcy proceedings," as used in section 24a. Here it has been thought to mean any of the administrative acts intervening between the filing of the petition and the granting of the discharge, as distinguished from those "controversies arising in bankruptcy proceedings" on petition, which would have been the subject of plenary suits if the estate had not been in the custody of a court of bankruptcy. The confusion that has resulted from the attempt of the courts to apply this classification to actual litigation affords strong support for the decisions of this court that the methods of review provided by the bankruptcy act are not mutually exclusive but cumulative. In re McKenzie, 142 Fed. 383, 73 C. C. A. 483; Dodge v. Norlin, 133 Fed. 363, 66 C. C. A. 425; In re Holmes, 142 Fed. 391, 73 C. C. A. 491.

The present appeal, however, would have been proper under any interpretation of section 24 of the bankruptcy act. This proceeding was instituted by the trustee to have certain adverse claims and liens upon property belonging to the estate declared void and for a sale of the property free and clear of the same. It involves every attribute of a familiar suit in equity. It can be distinguished from such suit only by the fact that it was instituted by petition instead of bill, and the adverse parties were brought before the court by citation instead of subpoena. There are some cases which suggest that if such a proceeding is instituted by a petition, filed by the adverse claimant for the enforcement of his right, and the trustee is cited to answer such a petition, this constitutes "a controversy in a bankruptcy proceeding," which may be reviewed by appeal; but if the parties be reversed, and the trustee files a petition charging that the adverse claim or lien is void, and asking that the property be sold free and clear of it, and the adverse claimant is cited in to answer such a petition, this constitutes not a "controversy," but a "proceeding in bankruptcy proper," and can be reviewed as to matters of law only under section 24b. Morgan v. First National Bank, 145 Fed. 466, 76 C. C. A. 236; In re McMahon, 147 Fed. 684, 689, 77 C. C. A. 668. In our judgment such a distinction is wholly untenable. If enforced, it would deny to parties having adverse liens or claims upon property belonging to the estate the right to review the decision of the court of bankruptcy as to any matter of fact. The consequence of such a holding would be serious. Whether

there would be any right of review on questions of fact would depend wholly upon whether the proceeding was instituted by the trustee or by the adverse claimant. In either case the right involved would be the same, and the issue tried would be the same. The only distinction would be that the parties would be reversed upon the record. Surely what constitutes a "controversy," within the meaning of section 24a, must be determined by the nature of the right involved and the issue tried, and not by the accidental circumstance as to which party is actor and which defendant. Sound reason can be given why as to the purely administrative steps in a bankruptcy proceeding the decision of the trial court on questions of fact should be final. In re Friend, 134 Fed. 778, 67 C. C. A. 500. But no sound reason can be given why, in a controversy possessing every attribute of a suit in equity, an aggrieved party should not have the right of review as to questions of fact as well as of law in accordance with the established practice in equity. It ought not to be possible for the trustee to defeat such a right by being first to file a petition. Most of the confusion on this subject has arisen out of a misunderstanding of the decision in First National Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051. In that case the trial court found as a fact that at the time the petition in bankruptcy was filed the property in dispute was in the possession, not of the bankrupt, but of an adverse claimant. The Supreme Court held that this finding defeated the jurisdiction of the trial court. The property had been converted into money, and the trial court by its decision ordered the money to be turned back to the parties who were in possession of the property. This is the point at which the decision of the Supreme Court has been misunderstood. It has been generally thought that the trial court, by its judgment disposing of the fund, passed upon the rights of the parties. This, however, was not the case. It would have been its duty to order the fund turned over to the party who had possession of the property, even if the court decided that it had no jurisdiction of the controversy. The Supreme Court places the decision of the trial court upon that ground, for it says, at page 291 of 198 U. S., page 696 of 25 Sup. Ct. (49 L. Ed. 1051):

"The sale in the circumstances did not change the situation. The proceeds stood in place of the property, and the order returning the proceeds was equivalent to an order returning the property. This it was proper to do, whether the court had held that it lacked jurisdiction, or ruled in favor of petitioners on the merits."

As thus interpreted, the decision of the trial court never passed upon the merits of the controversy. The whole case as construed by the Supreme Court involved solely a question of jurisdiction. If that was its character, it presented simply a question of law which might be fully reviewed by petition. The Supreme Court has itself thus interpreted its decision in First National Bank v. Title & Trust Company in the recent case of Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772. Speaking of its former decision, the court there says:

"In that case there was an attempt on the part of the trustee to invoke an adjudication as to the title to property which the District Court found not to be in the possession of the trustee, notwithstanding the petition of the

trustee had averred possession, and it was held that when this fact appeared the District Court had no longer jurisdiction of the case, under the doctrine laid down in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, and ought to have dismissed the case."

It is manifest that the Supreme Court, if the judgment in First National Bank v. Title & Trust Company had properly involved a decision as to the merits, would have decided that appeal was the proper method of bringing the question before the appellate court, for it sustained an appeal on a petition by a trustee to determine the rights of adverse claimants to property in the custody of the court in a later case reported in the same volume, namely, Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157.

We are of the opinion, therefore, that the case is properly before us on the appeal.

The objection of the appellant that the trial court was without jurisdiction of the property, because it was not situated in the district of Kansas, has no merit. Upon the filing of a petition in bankruptcy, all property held by or for the bankrupt is brought within the custody of the court of bankruptcy, and, upon adjudication, that court is vested with jurisdiction to determine all liens and interests affecting it. This jurisdiction is coextensive with the United States. In re Wood & Henderson, 210 U. S. 246, 28 Sup. Ct. 621, 52 L. Ed. 1046; In re Granite City Bank, 137 Fed. 818, 70 C. C. A. 316; In re Muncie Pulp Co., 151 Fed. 732, 81 C. C. A. 116; Guardian Trust Co. v. Kansas City Southern Railway Co. (C. C. A.) 171 Fed. 43; Dempster v. Waters-Pierce Oil Co. (C. C. A.) 172 Fed. 353.

This brings us to the merits of the case. At all the times mentioned in the record, Mr. and Mrs. Thomas were citizens and residents of the state of Kansas, by whose laws the wife's right of dower has been abrogated. By the laws of Missouri, where the lands are located, the wife is granted a right of dower in all real property owned by the husband during coverture. Section 8 of the bankruptcy act is as follows:

"The death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane: Provided, that in case of death, the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence."

It is contended by appellee, and was held by the trial court, that under the proviso of this section the dower rights of the wife, in case of the bankruptcy of her husband, are restricted to those allowed by the laws of the state of the bankrupt's residence. Upon this interpretation of the statute, it was decided that Mrs. Thomas was not entitled to any dower interest in property situated in Missouri, although the laws of that state granted her such rights. We do not think this a sound view of the law of dower, or of section 8 of the bankruptcy act.

1. It is first urged in support of the decision that, if the laws of the several states on the subject of dower are made applicable to the estates of bankrupts, it will cause the bankruptcy act not to be uniform. That, in our opinion, is a mistaken view of the provision of the federal Constitution relating to bankruptcy. The uniformity

which it requires relates to the law itself, and not to its results upon the varying rights of debtor and creditor under the laws of the several states. The Constitution requires acts of bankruptcy to be "uniform throughout the United States." That requirement had its origin in the fear, which was at all times a controlling motive in the convention that framed the federal Constitution, that the powers which it conferred would be exercised by the party in control of the national government to oppress that section of the country which for the time being was opposed to such party. It belongs to the same class as the provision which requires revenue laws to be uniform. As Judge Love says in the case of Darling v. Berry (C. C.) 13 Fed. 659, 667:

"When a bankrupt, revenue, or naturalization law is made by its terms applicable alike to all the states of the Union, without distinction or discrimination, it cannot be successfully questioned on the ground that it is not uniform, in the sense of the Constitution, merely because its operation or working may be wholly different in one state from another. The circumstances and conditions existing in the states of this Union are infinitely various. No law which human ingenuity could possibly frame would be uniform in the sense of operating equally or alike in the various states, with their different conditions and diversified interests. The Constitution provides that 'all duties, imposts and excises shall be uniform throughout the United States.' Now, suppose one or more states should succeed in suppressing utterly the manufacture and sale of ardent spirits and malt liquors, then a federal tax upon these commodities would be entirely inoperative in such states. In such case millions might be collected under an excise law in Illinois, and not a cent in Iowa. The operation of such a law would then be anything but uniform in the two states; but would any court for that reason declare a general law imposing a tax of the kind unconstitutional? Again, a tariff law might be anything but uniform in its operation upon different states. It might foster the industry of a manufacturing state, and oppress that of a strictly agricultural state. But could it on this account be said to be not a uniform law within the meaning of the Constitution, and therefore void? * * * All that the Constitution intends is that Congress shall not pass partial revenue and bankrupt laws. It shall not prescribe one law for this state or section, and a different law for that state or section. The law must be general and uniform in its provisions, but its working and operation may be very different in different states, owing to their diverse conditions and circumstances. Congress can prescribe a uniform law, but it cannot create uniform conditions and circumstances in the various states of the Union."

Nothing can be added to the clearness and force of this language. In our dual form of government, when Congress legislates upon the subject of bankruptcy, it applies the system which it ordains to the rights of both debtor and creditor, as defined by the laws of the states. It could not make the results of a law of bankruptcy uniform, without establishing a comprehensive code embracing the entire subject-matter of civil law. It is manifest, therefore, that the requirement that a statute of bankruptcy shall be uniform has no bearing on the right of dower. That is a matter exclusively for state definition. See, also, Hanover National Bank v. Moyses, 186 U. S. 181, 190, 22 Sup. Ct. 857, 46 L. Ed. 1113.

2. It is next urged that the right of dower belongs in the same class as the right of exemptions and homesteads, which are confined by section 6 of the bankruptcy act to the state of the bankrupt's domicile. Their similitude is very slight. Both are in a general way for the protection of the family. There, however, their likeness ceases. The

homestead and exemptions are a part of the bankrupt's estate. They are both primarily to be claimed by him and set off to him. Their selection from his estate arises at the time when that estate is to be appropriated to the payment of the claims of his creditors. Dower, on the other hand, is no part of the bankrupt's estate. The wife derives no right from him either by grant or contract. As the Supreme Court says in Randall v. Krieger, 23 Wall. 137, 148, 23 L. Ed. 124: "It is wholly given by law." Congress has plenary power over the subject of exemptions, because they are part of the bankrupt's estate. It may, as in the present law, adopt the exemption laws of the several states, or it may, as in the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), adopt local laws in part, and supplement these with a schedule of its own. Its power to deal with the subject, however, arises out of the fact that exemptions are a part of the bankrupt's estate. This consideration shows that the right of dower does not belong in the same class. Again, the right of dower has nothing to do with the in-solvency of the husband. It arises from time to time during the marriage relation as the husband acquires real property. If the wife has not released her right of dower, it is as much her own private, absolute property as if she had acquired it by purchase. That estate can no more be transferred to her husband's creditors than any other portion of her separate estate. At the present time in the United States, the wife, as to her property rights, is a third person, and her estate is no more affected by the insolvency of her husband than is the property of other third parties. In our judgment it would be beyond the constitutional power of Congress to provide that in case of bankruptcy the dower rights of the bankrupt's wife, as defined by the laws of the several states, ceased, and the real property owned by him passed to his trustee in bankruptcy discharged from such right of dower. Bankruptcy can only deal with what in law belongs to the bankrupt. It may annul his acts and the acts of his creditors which interfere with the just enforcement of its provisions. It cannot, however, annul an act of the Legislature of a state which previous to the statute of bankruptcy had vested an estate in the wife of the bankrupt. Its whole field of operation is circumscribed to getting in the estate which under the law belongs to the bankrupt, and distributing the same to his creditors. It cannot reach out and take property which under the law belongs to the wife, and apply it to the payment of the bankrupt's debts, any more than it could seize that portion of her property which she acquired by purchase or devise. Again, it does not follow that because the right of homestead and exemptions is confined in most of the states to the domicile of the claimant, such a restriction would be appropriate in regard to dower. Dower is not measured in value or quantity as homesteads or exemptions are. The amount of it is dependent solely upon the amount of real property of which the husband is seized. The debtor could not be allowed homesteads and exemptions under the laws of different states without securing a double allowance. The right must be restricted to the laws of some particular state, and the most natural restriction is the state of the claimant's domicile. Such considerations, however, do not apply to dower. Granting the

right in real property situated in different states does not duplicate the right. As already mentioned, it is measured by the extent of the husband's ownership of property, and the location of such property is material only as the right of dower is governed by the law of the state in which the land is situated.

We are unable to see how the decision in Re Stevens, Fed. Cas. No. 13,392, throws any light on the present case. There the bankrupt had filed a petition in bankruptcy in the Eastern district of Wisconsin. A part of his estate, consisting of a span of horses, harness, and wagon, while temporarily across the state line in Illinois, had been seized on a warrant of attachment. The filing of the petition in bankruptcy had the effect to dissolve this attachment; but the creditors petitioned the court of bankruptcy to allow the action in Illinois to proceed, assigning as a reason that under the exemption laws of Wisconsin the property in question would be exempt, while under the laws of Illinois it would not be. The court very properly held that the bankrupt's right of exemption must be determined by the state of his domicile; that the creditors could not invoke the laws of Illinois, because they granted less exemptions, any more than the bankrupt could have invoked them if they had granted larger exemptions than Wisconsin.

3. Some point is made of the fact that under the laws of Kansas the family secured a liberal homestead and exemptions. That has nothing to do, however, with the right of dower. The right of homestead and exemptions has existed in all of the states granting the right of dower, and in many of them these allowances are quite as liberal as they are in the state of Kansas.

4. That Mrs. Thomas has an inchoate right of dower in the property in question under the laws of Missouri is not controverted. Such a right is expressly secured to her by sections 2933 and 2946 of the Revised Statutes of 1899 of that state (Ann. St. 1906, pp. 1690, 1698), and continues until released by her deed in the manner therein specified. These statutes have been looked upon with favor by the highest court of that state, and so construed to carry out their manifest purpose. Grady v. McCorkle, 57 Mo. 172, 17 Am. Rep. 676; Ellis v. Kyger, 90 Mo. 606, 3 S. W. 23; Davis v. Green, 102 Mo. 170, 14 S. W. 876, 11 L. R. A. 90; Hall v. Smith, 103 Mo. 289, 15 S. W. 621; Blevins v. Smith, 104 Mo. 583, 16 S. W. 213, 13 L. R. A. 441; Long v. Kansas City Stockyards Co., 107 Mo. 298, 17 S. W. 656, 28 Am. St. Rep. 413. The right of dower in real property is determined by the laws of the state in which the property is situated. Story on Conflict of Laws, §§ 424, 428, 445; Kerr v. Moon, 9 Wheat. 565, 6 L. Ed. 161; Wilson v. Cox, 49 Miss. 538; Apperson v. Bolton, 29 Ark. 418; Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324; Jones v. Gerock, 59 N. C. 190; Jennings v. Jennings, 21 Ohio St. 56; Atkinson v. Staigg, 13 R. I. 725. The highest court of Missouri, from an early date, has construed the statutes of that state as securing the right of dower in real property within the state to nonresidents, the same as to residents. Stokes v. O'Fallon, 2 Mo. 32. Suppose a bankrupt residing in Missouri should die seised of real property in Kansas; would his widow, under the proviso of section 8 of the bankruptcy act, be

173 F.—38

entitled to dower in that property? Plainly not, because the law of Kansas does not grant dower. No more should she, when the situation is reversed, lose her right of dower as to real property situated in Missouri. That right is fixed by the laws of the state in which the property is situated.

It is said by appellee that the right of dower is "a mere intangible, inchoate, contingent expectancy, and not an estate in lands, and does not rise to the dignity of a vested right." That is quite true. But this has been the quality of the right at all times, at common law and under statute. It is precisely such a right that is secured by the statute of Missouri, and it would be, in our judgment, a perversion of judicial power to make of the inherent qualities of the right a reason for destroying or impairing it.

It must be conceded, therefore, that the right exists, unless it has been taken away by the bankruptcy act. To determine whether that has happened, we ought to look first at the general scheme of that statute. The most conspicuous feature of the present bankruptcy act is a clear purpose to save to the bankrupt and his family every right possessed by them under the laws of the several states, and to grant to creditors no property or right which would not have been theirs if the bankruptcy act had not been passed. The courts have repeatedly referred to this as a feature distinguishing the present act from all previous statutes on the subject. It makes the law of the several states the measure of the rights to be protected and enforced, both as to the bankrupt and his creditors. In defining what shall pass to the trustee for the benefit of creditors, it designates "property which prior to the filing of the petition the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him." By the express provisions of the statute of Missouri, the wife's right of dower does not fall within this language. It being no part of the property which the trustee is to administer, it is difficult to understand how the right of dower can be affected by the bankruptcy act; and yet the whole purpose of the order now under review is to appropriate to the bankrupt's creditors the widow's right of dower, by selling the property freed from that right. But, again, the present bankruptcy act also approaches this subject negatively. It points out in section 67 all liens, transfers, and estates which are to be invalidated by the bankrupt act. If it had been the intent of the framers of the statute either to restrict or abolish the right of dower, we should have found the provision designed to accomplish that purpose in this section. It is not there. On the contrary, a most scrupulous care is evinced throughout the section to save all rights and liens obtained in good faith from the bankrupt. If rights resting wholly upon private negotiation are safe, can any reason be assigned why a right created by statute in furtherance of the public policy of a state should not also be secure?

In the light of these general considerations, let us approach section 8 of the bankruptcy act, which, according to appellee, destroys Mrs. Thomas' right of dower. In our judgment that right is safe upon either of four grounds:

(a) The principal clause of section 8 deals with the contingency of the death of the bankrupt during the pendency of the proceedings in bankruptcy. By a cardinal rule of interpretation, a proviso does not extend beyond the scope of the principal clause of the statute. The entire language and purpose of the section clearly indicates to our minds that this rule of interpretation should be applied in ascertaining its meaning. It relates only to estates in which the bankrupt dies during the pendency of the proceeding. This is not only the general subject-matter of the section, but is also clearly pointed out in the proviso itself as the contingency intended to be covered by it. "In case of death," are the first words of the proviso, and these words qualify all its other provisions. Such being the scope of the section, the estate here involved can be in no way affected by it, for the bankrupt is still alive.

(b) It was manifestly the belief of Congress that, in the absence of section 8, the bankruptcy proceeding would abate in case of the bankrupt's death. The property of the estate would in that event pass to the personal representatives of the bankrupt, to be administered according to local laws. In such a contingency, the widow's right of dower in real property, and the allowances to the family out of the personal estate, would be complete, would become immediately vested, and would take priority over the rights of creditors. Section 8 prevents the proceeding in bankruptcy from abating; but, by the proviso, Congress intended to save to the widow and children all that they would have obtained in case of its abatement. It cannot be denied that, if the present bankruptcy proceeding were to abate, Mrs. Thomas' right of dower in real property in Missouri would be complete.

(c) The proviso may be interpreted as having been used simply out of an abundance of caution. If that be its effect, it leaves all rights precisely as they would have been if the proviso had been omitted. It neither enlarges nor restricts those rights, but simply saves them. That is the interpretation which was put upon the language by the majority of this court in the case of In re McKenzie, 142 Fed. 383, 73 C. C. A. 483. If we adopt that interpretation, it leaves the right of dower just as it stood under the laws of the several states. The fact that the proviso is restricted by the clause "fixed by the laws of the state of the bankrupt's residence" would be immaterial. The entire proviso being used only out of an abundance of caution, the fact that its language is not as comprehensive as the right to which it refers would not restrict the right, because the intended effect of the proviso is simply to preserve rights as already existing. To say that the proviso was used for the purpose of removing a possible doubt as to whether existing rights were not to be affected by section 8, and yet hold that, because its language is narrow, the rights to which it refers are narrowed, is to deny in the conclusion what is assumed in the premise, namely, that the proviso is used out of an abundance of caution, and not for the purpose of affecting existing rights. It was expressly decided in Porter v. Lazear, 109 U. S. 84, 3 Sup. Ct. 58, 27 L. Ed. 865, that the omission from a bankruptcy act of any provision saving the right of dower "does not enlarge the effect of the assign-

ment, or of the sale in bankruptcy, so as to include lawful rights which belong, not to the husband, but to his wife." It was further decided that the proviso in the act of 1841, saving the right of dower, was "a mere declaration, inserted for greater caution." See, also, Hanover National Bank v. Moyses, 186 U. S. 181, 190, 22 Sup. Ct. 857, 46 L. Ed. 1113. If we adopt the interpretation of section 8 here outlined, there is no room for a contention that Mrs. Thomas' right of dower does not exist as defined by the laws of Missouri.

(d) At the time the bankruptcy act was passed, there were nine states of the Union, namely, Connecticut, Georgia, Mississippi, North Carolina, Tennessee, Vermont, New Hampshire, Delaware, and Florida, in which the right of dower applied, not to real property of which the husband was seised during the coverture, but only to such real property as he was seised of at the time of his death. There were also in force in many states statutes giving to the wife a right in the nature of dower in all personal property owned by the husband at the time of his death. In all of these states, if a bankrupt husband died while his proceedings were pending, it might very well have been contended that the wife's right of dower in his estate did not exist, because the legal title and possession of his property would have passed to his trustee. It was the view of Judge Adams in the McKenzie Case that the proviso of section 8 was intended to prevent such a result. That interpretation receives strong support from the foregoing facts. We recognize, of course, that Congress could not, in the bankruptcy act, enlarge the right of dower as defined by the laws of the several states; and if the right as thus defined was restricted to property of which the husband was possessed at the time of his death, Congress could not give the right to property not so situated. But, on the other hand, the bankrupt is dispossessed of his property by virtue of the bankruptcy act, and it was competent for Congress to define and restrict the force and effect of that act. The trustee in bankruptcy holds for the benefit of the bankrupt, as well as his creditors, and it was competent for Congress to declare that the title passing to him under its act should not impair the right of dower as granted by the laws of the several states. This would be in harmony with the general scheme of the act to give to the creditors only that which would have belonged to them if the bankruptcy act had not been passed, and to save to the bankrupt and his family everything that would have belonged to them as against the creditors in the absence of the bankruptcy act. If this be the correct interpretation of the proviso, Mrs Thomas' right of dower is safe upon two grounds: (1) The entire purpose of the proviso being to preserve the right as defined by the laws of the several states, that purpose should control, and the last clause should not be seized upon to defeat it. (2) The proviso was intended to apply only to those states in which the right of dower is restricted to property of which the husband is seised at the time of death. Missouri is not in that class, as the widow's right of dower there extends to all property owned by the husband during the coverture. Therefore the proviso, under the view of its meaning which we are now considering, could have no effect upon real property in that state.

The proviso deals with two classes of rights: First, the widow's right of dower in real property; second, the allowances to the family out of the personal estate. This second class of rights is necessarily fixed by the laws of the state of the bankrupt's residence, for general rights in personal property follow the person of the owner and are determined by the laws of the state of his residence. The framer of the proviso used, in its last clause, language which was entirely appropriate to the allowances, and in part appropriate as to the right of dower. Having in mind several classes of rights, he made the not uncommon mistake of using language which was not quite comprehensive enough to cover all those rights under all conditions. If the proviso was a grant of rights, there would be reason in restricting the rights to its language; but, being intended to protect existing rights, it ought not to be given an interpretation which would destroy any part of those rights.

Real property is now, especially in the West, almost as much an article of trade as personal property. For this reason the right of dower, which used to be favored, has of late become odious. Courts, however, cannot allow the odiousness of the right to lead them to adopt a strained construction of a statute, for the purpose of abating what may possibly be regarded as a commercial nuisance. These are considerations for the Legislature alone.

The case was disposed of in the trial court upon cross-bill and answer, without the introduction of evidence. The only questions raised were questions of law. It must have been held that the wife of a resident of Kansas was not entitled to an estate of dower in real property situated in Missouri. We think that construction was wrong. But, if the interpretation which we have indicated should be accepted, it would not follow that Mrs. Thomas would be entitled to an estate of dower in the property here involved. If the averments of the original petition are true, Mr. Thomas held the property in trust for the corporation, and in that case his wife would not be entitled to dower rights therein.

The decree should be reversed, and the trial court directed to proceed in accordance with the views expressed in this opinion. It is so ordered.

RINER, District Judge, dissents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes