In re John CURRY, Jr. and Jessie Mae Curry, Debtors.

John CURRY, Jr. and Jessie Mae Curry, Plaintiffs,

v.

ASSOCIATES FINANCIAL SERVICES, Defendants.

Bankruptcy No. 579–1155.

United States Bankruptcy Court, N. D. Ohio.

July 21, 1980.

J. L. Reich, Allentown, Pa., for John and Jessie Curry.

Brian A. Bash, Cleveland Heights, Ohio, for Associates Financial Services.

## FINDING AS TO AVOIDANCE OF SECURITY INTEREST

H. F. WHITE, Bankruptcy Judge.

The debtors, husband and wife, filed a joint petition under Chapter 7 of the Bankruptcy Code and, in the course of the Chapter 7 proceeding, filed a motion to avoid the nonpurchase-money security interest of Associates Financial Services on the debtor's household goods pursuant to 11 U.S.C. section 522(f). Associates Financial Services (hereinafter referred to as Associates) opposed the avoidance of its security interest.

The parties agreed that there was no dispute as to the facts and submitted the case on the issue of law. However, in order to clarify the issues, this Court makes the following finding of Fact and Law.

### FINDING OF FACT

1) The debtors filed a voluntary petition in Bankruptcy on December 17, 1979.

2) The debtors claimed their furniture and household goods exempt under Ohio Revised Code section 2329.66(A)(4)(b).

3) No party in interest objected to the property claimed exempt by the debtors, except Associates which claims a security interest in the property claimed exempt.

4) Associates has a security agreement and duly filed a financing statement on August 7, 1978, as required by Ohio Revised Code 1309, on the property claimed exempt by the debtors.

5) The debtors now have a balance of Four Thousand Four Hundred Fifty Five Dollars and Ninety Three Cents ($4,455.93) due to Associates on the loan.

6) The security interest of Associates is a nonpossessory, nonpurchase-money security interest in household furnishings and goods.

## ISSUES

The issues are:

1) whether pursuant to 11 U.S.C. section 522(f), the debtors can avoid nonpossessory, nonpurchase-money security interests on certain household and personal goods that impair exemptions to which the debtors are entitled, notwithstanding Ohio Revised Code Ann. section 2329.661(C);

. 2) whether 11 U.S.C. section 522(f) can be applied retrospectively to contractual obligations made prior to the effective date of the new Bankruptcy Code; and

3) whether, in applying 11 U.S.C. section 522(f) to obligations made prior to the effective date of the new Bankruptcy Code, the debtors are entitled to claim the Ohio exemptions which were in effect at the time the obligations were incurred or the Ohio exemptions in effect at the time the debtors filed their petition in bankruptcy.

## DISCUSSIONS OF LAW

The first issue is whether, pursuant to 11 U.S.C. section 522(f), the debtors can avoid nonpossessory, nonpurchase-money security interests on certain household and personal goods that impair exemptions to which the debtors are entitled, notwithstanding Ohio Revised Code Ann. section 2329.661(C).

11 U.S.C. section 522(f) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

Subsection (b) of 11 U.S.C. section 522 gives the debtor a choice of exempting from property of the estate either (1) property that is specified under subsection (d) of 11 U.S.C. section 522, unless the State law of the State in which the debtor's domicile has been located for the one hundred eighty (180) days immediately preceding the date of the filing of the petition specifically does not so authorize; or (2) any property that is exempt under Federal law, other than 11 U.S.C. section 522(d), or under State law of the State in which the debtor's domicile has been located for the one hundred eighty (180) days immediately preceding the date of the filing of the petition.

The General Assembly of the State of Ohio "opted out" of the Federal exemptions under 11 U.S.C. section 522(d) by enacting Ohio Revised Code section 2329.662. Section 2329.662 of the Ohio Revised Code provides that:

Pursuant to the "Bankruptcy Reform Act of 1978", 92 Stat. 2549, 11 U.S.C.A. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt property specified in

the "Bankruptcy Reform Act of 1978". 92 Stat. 2549, 11 U.S.C.A. 522(d).

■ Thus, a debtor domiciled in Ohio may only exempt from property of his estate property that is specified under Ohio Revised Code Section 2329.66.

Ohio Revised Code Section 2329.66(A)(4)(b) entitles the debtor to hold exempt:

. . . the person's interest, not to exceed two hundred dollars in any particular item, in household furnishings, household goods, appliances, . . ., that are held primarily for the personal, family, or household use of the person.

Ohio Revised Code Section 2329.661(C) provides that:

Section 2329.66 of the Revised Code does not affect or invalidate any sale, contract of sale, conditional sale, security interest, or pledge of any personal property, or any lien created thereby.

Debtors claimed their exemptions under O.R.C. 2329.66 and are attempting to avoid the nonpurchase-money security interest of Associates pursuant to 11 U.S.C. section 522(f). This contradicts the language of O.R.C. 2329.661(C). However, it will be shown that the Federal bankruptcy statute, 11 U.S.C. section 522(f) is superior to the state exemption statute, O.R.C. 2329.661(C).

The power to legislate on the subject of bankruptcies is conferred expressly upon Congress by the Constitution of the United States. Article I, Section 8, Clause 4 of the United States Constitution provides: "The Congress shall have power . . . to make uniform laws on the subject of bankruptcies throughout the land." In addition to this express grant, there is the general grant of power under Article I, section 8, clause 18 that: "The Congress shall have the power . . . to make all laws which are necessary and proper for carrying into Execution the foregoing powers . . ."

■ The uniformity which is required by the Constitution relates to the law itself and not to its results upon the varying rights of debtor and creditor under the laws of the several states. *Thomas v. Woode*, 173 F. 585 (8th Cir. 1909).

■ Absolute uniformity in the application of the Bankruptcy Act is impossible, since Congress cannot create uniform conditions and circumstances in the various states of the Union. *Thomas*, supra. Thus, the recognition of state laws as determinative of dower rights, liens, priorities, and exemptions, does not render the Bankruptcy Act unconstitutional as lacking in uniformity, although the result of such recognition is that the Act does not operate with the same results in all states. *Stellwagen v. Clum*, 245 U.S. 605 at 613, 38 S.Ct. 215 at 217, 62 L.Ed. 507 (1918).

■ The grant of power to Congress to legislate on the subject of bankruptcies includes the power to impair the obligations of contracts notwithstanding the individual states are forbidden to do so. *Hanover National Bank v. Moyses*, 186 U.S. 181 at 188, 22 S.Ct. 857 at 860, 46 L.Ed. 1113 (1902). Article I, section 10 of the Constitution of the United States which prohibits any state from passing a law which impairs the obligations of contracts, is in its terms, a limitation on the powers of the states only. *Louisville Joint Stock Land Bank v. Radford*, 74 F.2d 576 at 580 (6th Cir. 1935).

■ The Constitutional provision conferring upon Congress the power to legislate on the subject of bankruptcies is read into contracts as constituting a part thereof. *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502 at 516, 58 S.Ct. 1025 at 1033, 82 L.Ed. 1490 (1938). A mortgagee's rights are at all times subject to bankruptcy legislation by Congress affecting the creditor's remedy against the debtor's assets or the measure of the creditor's participation therein provided only that the bankruptcy provisions are consonant with fair, reasonable, and equitable distribution of the assets. Re *Chicago, R.I. & P.R. Co.*, 90 F.2d 312 at 316 (7th Cir. 1937).

■ The avoiding power of the debtor under 11 U.S.C. section 522(f) only reaches judicial liens on any exempt property and

non-possessory, nonpurchase-money security interests on certain household and personal goods to the extent that an exemption is impaired.

The Bankruptcy Code defines a judicial lien as a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. 11 U.S.C. Section 101(27). There are two types of security interests under the Uniform Commercial Code and under Ohio law: (1) a purchase money security interest, and (2) a nonpurchase-money security interest. A purchase money security interest is a security interest which is taken or retained by the seller of the collateral to secure all of (or) part of its price; or is taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or to the use of collateral if such value is in fact so used. Ohio Rev. Code Ann. section 1309.05.

Under Ohio Rev. Code Ann. 1309.21(A)(4) a purchase money security interest in consumer goods is automatically perfected and under Ohio Rev. Code Ann. section 1309.-31(D) takes priority over other security interests.

Purchase money security interests are protected by statute because of the strong connection between the lending of money by the creditor and the transfer of goods to the debtor. This connection does not exist in the nonpurchase-money security interest situation where the creditor takes a security interest in all the household goods the debtor already has rights in, to secure the payment of a loan.

Congress enacted 11 U.S.C. Section 522(f) to protect the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. H. R. Rep. No. 595, 95th Cong. 1st Sess. 362 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787; S. Rep. No. 989, 95th Cong. 2nd Sess. 76 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787. Congress looked to the practice of creditors with judicial liens and nonpurchase-money security interests under the Bankruptcy Act and concluded that these creditors had an unfair advantage over the debtor. Congress intended that the debtor use the avoiding power under Section 522(f) of the Bankruptcy Code, to eliminate this unfair advantage.

The purpose of Section 522(f) of the Bankruptcy Code is stated in the following excerpt from the House of Representatives Report:

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase-money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor.

If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditors in the debtor's hands as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. The creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by overreaching creditors. This bill eliminates any unfair advantage the creditors have. H. Rep. No. 595, 95th Cong., 1st Sess. 126–27 (1977), U.S. Code Cong. & Admin. News 1978, p. 6087.

The Commission on the Bankruptcy Laws of the United States, which was established by Congress in 1970 to study, analyze, evaluate, and recommend changes in the bankruptcy laws and which proposed many of the new provisions of the Bankruptcy Code, stated in its report to Congress that:

Subdivision (f) avoids one of the means by which the policy of Section 6 of the Act (the exemption section) was frustrated. Exemptions under this section cannot be affected by judicial liens or agreements other than an indefeasible security agreement. *H.R. Doc. No. 93–137*, 93d Cong. 1st Sess. Pt. II at 130 (1973).

■ Subsection (f) (of 11 U.S.C. Section 522) grants this avoiding power with regard to any exemption allowed under subsection (b) (of 11 U.S.C. section 522) including the state option. If a state opts out of the federal exemption, it does not affect the debtor's power under subsection (f). 3 Collier on Bankruptcy, Section 522.29 (15th Ed. 1979). Thus, although Ohio opted out of the federal exemptions under 11 U.S.C. Section 522(d), the exemptions claimed by an Ohio debtor under Ohio Rev. Code Ann. 2329.66 are still protected by the debtor's ability under 11 U.S.C. Section 522(f) to avoid judgment liens and nonpossessory, nonpurchase-money security interest in certain household and personal goods to the extent of the exemptions allowable in the absence of such liens under Ohio Rev. Code Ann. 2329.66.

Pursuant to the supremacy clause, Article VI, clause 2 of the United States Constitution, any state legislation which frustrates the full effectiveness of federal law is rendered invalid. *Perez v. Campbell*, 402 U.S. 637 at 652, 91 S.Ct. 1704 at 1712, 29 L.Ed.2d 233 (1971); See: *Moore v. Bay*, 284 U.S. 4 at 5, 52 S.Ct. 3 at 4, 76 L.Ed. 133 (1931); *Globe Bank v. Martin*, 236 U.S. 288 at 298, 35 S.Ct. 377 at 380, 59 L.Ed. 583 (1914).

■ Subject to the general limitation on state powers as the prohibition against impairing the obligations of contracts, a state may pass and enforce insolvency and even "bankruptcy" laws, binding upon persons and property within its jurisdiction, whenever there is no act of Congress extant with which the state laws would conflict. *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261 at 263–64, 49 S.Ct. 108 at 109–110, 73 L.Ed. 318 (1929).

■ Ohio Rev. Code Ann. section 2329.-661(C) which provides that the Ohio exemptions do not invalidate any security interests is in conformance with this constitutional prohibition against any state law impairing the obligation of contracts. However, Ohio Rev. Code Ann. Section 2329.-661(C) is in direct conflict with 11 U.S.C. section 522(f) and the act of Congress prevails over the conflicting state law.

■ Therefore, it is the conclusion of the court that when debtors in Ohio claim exemptions under Ohio Rev. Code Ann. 2329.66, the debtors are entitled to avoid judicial liens and nonpurchase-money security interests on household and personal goods to the extent of the exemptions allowed under Ohio Rev. Code section 2329.66 in the absence of such liens.

The second issue is whether 11 U.S.C. section 522(f) can be applied retrospectively to contractual obligations made prior to the enactment date of the new Bankruptcy Code.

■ The power of Congress to establish bankruptcy laws is subject to the due process clause of the Fifth Amendment to the United States Constitution. It has been held that a violation of the fifth amendment due process clause occurs when the retrospective application of a bankruptcy

statute destroys vested property rights. *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (hereinafter cited as *Radford*).

The question as to whether a statute operates retrospectively, or prospectively only, is one of legislative intent. *Hassett v. Welch*, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub. L. 95–598, known as the "Savings Provision," provides that:

(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

Accordingly, only cases commenced prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, are to be determined under the former Bankruptcy Act (bankruptcy statute enacted on July 1, 1898, and amended from time to time until the passage of the 1978 legislation). For all other purposes, the Bankruptcy Act is repealed. Section 401(a) Title IV, Pub. L. 95–598.

Thus, in cases filed after October 1, 1979, if Congress did not intend the substantive provisions of the Bankruptcy Reform Act to apply to obligations created by the debtors prior to October 1, 1979, there would be no bankruptcy laws in effect to deal with those debts. Therefore, it appears that Congress intended that the Bankruptcy Reform Act be applied retrospectively.

In the *Radford* case, Radford, hereinafter referred to as debtor, took advantage of the provisions of the Frazier-Lemke Act, which amended section 75 of the Bankruptcy Act, and sought to stay all proceedings against his farm by the mortgagee bank for five years, during which five years the debtor was to retain possession provided he pay a reasonable rental. At the end of the five years, or prior thereto, the debtor could purchase the property by paying into the court the appraised price of the property. The mortgagee bank, in the *Radford* case, refused to consent to the sale of the property to the debtor under the provisions of the Frazier-Lemke Act.

The Supreme Court held that the effect of the Frazier-Lemke Act, which only applied to debts existing at the time the Act became effective, was the taking of substantive rights in specific property acquired by the bank prior to the Act. *Radford* supra, 295 U.S. at 590, 55 S.Ct. at 863. The Court looked to the law of the State, Kentucky, and found the following to be the rights of the mortgagee prior to the passage of the Act:

1) right to retain lien until indebtedness thereby secured is paid;

2) right to realize upon security by judicial public sale;

3) right to determine when such sale shall be held, subject only to discretion of court;

4) right to protect its interest in the property by bidding at such sale and thus to assure having mortgaged property devoted primarily to satisfaction of debt, either through receipt of proceeds of fair competitive sale or by taking property itself; and

5) right to control meanwhile the property during period of default, subject only to discretion of court, and to have rents and profits collected by receiver for satisfaction of the debt.

The Court in *Radford* held section 75 of the Bankruptcy Act invalid because it deprived the mortgagor of these five enumerated rights.

The underlying principle of contracts relating to pledges of property as security for debts was described in *In re Carter*, 56 F.Supp. 385 at 393 (W.D.Va.1944) as the right of the creditor to acquire property pledged as security in lieu of his debt in case the debt is not paid. *The creditor* ·

*lends money because of his belief that the property is worth at least the amount of the loan and because of his willingness to take the property in lieu of the debt in case the debt is not paid. This is the foundation, the essential element of every such contract.* (emphasis added) *In re Carter,* supra at 388.

In the *Radford* case, the mortgagee bank did lend money to the debtor and did take the farm land as security for the loan because of the bank's belief that the property was worth at least the amount of the loan and because of its willingness to take the farm land in lieu of the debt in case the debt was not paid. This is not the case where a creditor takes a nonpurchase-money security interest in the debtor's household and personal goods. Congress realized this difference and in explaining the purpose of section 522(f) of the Bankruptcy Code stated that:

. . . Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings and obtain a waiver by the debtor of his exemptions . . . If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor. to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditors in the debtor's hands as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. The creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make. *H. Rep. No. 595,* 95th Cong., 1st Sess. 127 (1977), U.S. Code Cong. & Admin. News 1978, p. 6088.

It has been the experience of this court that creditors holding nonpurchase-money security interest on all of the debtor's household goods and a second mortgage on the debtor's residence release such liens on household goods when they become aware that the debtor is about to file a petition under Chapter 13 of the Bankruptcy Code. Under 11 U.S.C. § 1322(b)(2), a Chapter 13 Plan may "modify the rights of holders of secured claims *other than* a claim secured *only* by a security interest in real property that is the debtor's principal residence, . . . ." (emphasis added). Thus, the creditors release their liens on debtor's household goods in an attempt to take away the debtor's ability to modify their rights under the provisions of a Chapter 13 Plan. This course of action by creditors lends support to the insight of Congress that holders of nonpurchase-money security interests on household goods rarely repossess.

A creditor who makes a loan and takes a nonpurchase-money security interest in highly depreciable household goods as security for the loan, does not actually take the household goods as security for the loan because there is no belief by the creditor that the household goods are worth the amount of the loan. The relationship between the value of the security and the amount of the loan that is present in a mortgage of real estate is not present in a nonpurchase-money lien on household goods. Thus, such creditor is rarely willing to take the household goods in lieu of the debt in case of default.

In one situation where the creditor holding household goods as security did repossess such goods upon the debtor's default, the court was informed that said creditor took the goods to the junk yard. This action by the creditor demonstrates that the creditor does not look to the household goods in lieu of payment when there is a default.

In *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1 at 15, 96 S.Ct. 2882 at 2892, 49 L.Ed.2d 752 (1976), the Supreme Court held that:

It is by now well established that legislative Acts adjusting burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and

irrational way. See: *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1936) and *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

The court further found that: "Our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." 428 U.S. at 16, 96 S.Ct. at 2893. See *Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947), *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940), *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935), *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934) and *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911).

Section 522(f) of the Bankruptcy Code is addressed to the legitimate end of protecting the debtor's exemptions, his discharge, and thus his fresh start and the means taken, permitting the debtor to avoid certain liens on certain exempt property, are reasonable and appropriate to that end. For the provisions of the Bankruptcy Act to violate the Fifth Amendment they must be so grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Campbell v. Alleghany Corp.*, 75 F.2d 947 at 953 (4th Cir. 1935). See Also: *Hanover*, supra, 186 U.S. at 192, 22 S.Ct. at 862.

Section 522(f) of the Bankruptcy Code does not make it possible for the debtor to avoid all nonpurchase-money security interests in exempt property. The debtor may only avoid a nonpurchase-money security interest in three categories of property: (1) household goods, (2) tools of trade, and (3) prescribed health aids, to the extent that the property could have been exempted in the absence of such lien. These three categories of property encompass property that is required for the maintenance, health, and welfare for the debtor and his family. The purpose of an exemption is not for the personal privilege of the debtor but for the benefit of his family who may be destitute and the public who might otherwise be bur-

dened with the support of an insolvent debtor's family. *In re Perry*, 225 F.Supp. 481 at 481–82 (N.D.Ohio 1963).

Congress, when drafting the new Bankruptcy Code, looked to the practice of creditors with nonpurchase-money security interests under the Bankruptcy Act and concluded that these creditors had an unfair advantage over the debtor. Congress intended that the debtor use the avoiding power under Section 522(f) of the Bankruptcy Code, to eliminate this unfair advantage. *H. Rep. No. 595*, 95th Cong., 1st Sess. 127 (1977).

This Court is aware that a trial court should be slow to deny constitutionality to an Act of Congress unless its conflict with the constitutional provision is clear. Such duty belongs peculiarly to the appellate courts. *Thompson v. United States*, 148 F.Supp. 910 at 914 (E.D.Pa.1957). Further, the burden of establishing the unconstitutionality of a statute rests on him who assails it and doubt as to the constitutionality of an act should always be resolved in its favor. *Metropolitan Cas. Ins. Co. v. Brownell*, 294 U.S. 580 at 584, 55 S.Ct. 538 at 540, 79 L.Ed. 1070 (1935).

Therefore, it is the conclusion of the court that 11 U.S.C. § 522(f) can be applied retrospectively by the debtors to avoid a nonpurchase-money security interest in household goods, claimed exempt by the debtors, which was granted to the creditor prior to the effective date of the Bankruptcy Code.

The third issue is whether, in applying 11 U.S.C. section 522(f) to obligations made prior to the effective date of the Bankruptcy Code, the debtors are entitled to claim the Ohio exemptions which were in effect at the time the obligations were incurred or the Ohio exemptions in effect at the time the debtors filed their petition in bankruptcy.

11 U.S.C. section 541 defines "property of the estate" and specifies what property becomes property of the estate. Under paragraph (1) of subsection (a), the estate is

compromised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Thus, all property of the debtor becomes property of the estate, even that needed for a fresh start. "After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. 522, and the court will have jurisdiction to determine what property may be exempted and what property remains as property of the estate." H. R. Rep. No. 595, 95th Cong. 1st Sess. 368 (1977), U.S. Code Cong. & Admin. News 1978, p. 6324.

Under 11 U.S.C. Section 522(1) the property claimed exempt by the debtor, under subsection (b) of section 522, is allowed as exempt by the court, absent an objection by a party in interest. Only if a party in interest contests the debtor's exemptions will the court determine what property may be exempted and what will remain property of the estate. In the instant case, Associates has objected to the exemptions claimed by the debtors.

The debtors herein, claimed their exemptions under the Ohio law that was "applicable on the date of the filing of the petition" as directed by 11 U.S.C. section 522(b)(2)(A). However, the general principle that exemption rights are to be determined as of the date of the filing of the bankruptcy petition may be subject to modification where exemption rights have been augmented between the time of the incurring of some of the bankrupt's indebtedness and the date of bankruptcy. 9 Am.Jr.2d Bankruptcy section 652 (1963) at 493.

Article I, section 10, clause 1 of the Constitution of the United States, commonly referred to as the contract clause, prohibits any state from passing a law which impairs the obligations of contracts. The contract clause is a limitation on the power of the states only. *Louisville Joint Stock Land Bank v. Radford*, 74 F.2d 576 at 580 (6th Cir. 1935).

The prohibition of the contract clause against the impairment of contracts by states is not an absolute one and is not to be read with literal exactness like a mathematical formula. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, at 428, 54 S.Ct. 231, at 236, 78 L.Ed. 413 (1934). In *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), the most recent case involving the contract clause, the Supreme Court set out a two-step analysis for determining whether a state statute violated the contract clause.

The first step in the analysis is to determine whether the application of the state statute would result in a substantial impairment of the contractual relationship. Assuming that the application of the state statute would result in a substantial impairment of the contractual relationship, the second step is to determine whether the state statute is reasonable and necessary to accomplish an important public purpose. If the impairment of contract is both reasonable and necessary to serve an important public purpose, the state statute will be upheld.

In *Allied Structural Steel Co. v. Spannaus*, the court stated that: The severity of the impairment measures the height of the hurdle which state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment will push the inquiry to a careful examination of the nature and purpose of state legislation." 438 U.S. at 245, 98 S.Ct. at 2723.

The new Ohio exemption statute, Ohio Rev. Code Ann. 2329.66, effective September 28, 1979, does increase the amount of property a debtor may hold exempt. The increase in the dollar amount of property which may be exempted is, however, a minimal alteration of the contractual relationship between debtor and creditor.

Inflation has made the increased dollar amounts under the new Ohio exemption statute equivalent in value to the lesser dollar amounts under the old Ohio exemption statute. The consumer price index has

increased 112.9 percent in the last decade.[1] Thus, a debtor who may claim household goods exempt to the extent of One Thousand Five Hundred Dollars ($1,500.00) today is in no better financial condition than a debtor who could claim household goods exempt to the extent of Six Hundred Dollars ($600.00) in 1970.[2]

In drafting the new Bankruptcy Code, Congress realized that the various fixed dollar amounts set forth in the Code would need to be adjusted occasionally if the dollar amounts were to be set at a realistic level in light of continued inflation. H. R. Rep. No. 595, 95th Cong., 1st Sess. 316 (1977). In 11 U.S.C. section 104, Congress provided that the Judicial Conference of the United States should transmit to the Congress and to the President before May 1, 1985, and before that date of every sixth year after May 1, 1985, a recommendation for the uniform percentage adjustment of each dollar amount in the Bankruptcy Code.

In view of today's inflation and the concomitant lower real value of the dollar, this court believes that the retrospective application of the increased exemption amounts results in a minimal alteration of the contractual relationship between debtor and creditor. Nevertheless, the court will proceed to the second stage of the inquiry and examine whether the new Ohio exemption statute is both reasonable and necessary to serve an important public purpose.

In *Manigault v. Springs*, 199 U.S. 473, at 480, 26 S.Ct. 127 at 130, 50 L.Ed. 274 (1905), the Supreme Court stated that:

> It is the settled law of this court that the interdiction of statutes impairing the obligations of contracts does not prevent a State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of Government to protect the lives, health, morals, comfort, and general welfare of the people, and it is paramount to any rights under contracts between individuals.

Exemption statutes have been noted to serve the following three purposes: (1) protection of individuals and families from pauperism during periods of financial difficulty; (2) encouragement of debtor rehabilitation; and (3) shifting of burdens of social welfare from community to creditors. 1A Collier on Bankruptcy 14th ed., Section 6.03(1), (1978). The legislative intent underlying exemption statutes is to further the aforementioned purposes. Such purposes are in the public interest in providing a minimum of economic security for the debtor and his family and in aiding the debtor's rehabilitation; placing the economic interest of the creditor in a position of secondary import.

The increased exemptions under the new Ohio exemption statute minimally alter the contractual relationship between the debtor and the creditor and such minimal alteration is reasonable and necessary to serve an important public purpose.

Therefore, it is the conclusion of this Court that the debtors herein are entitled to claim the Ohio exemptions that were in effect at the time the debtors filed their petition in bankruptcy.

---

1. See: Economic Report of the President (1980), app. B. Table B–49, at 259; U.S. News & World Report, July 14, 1980, at 47.

2. Ohio Rev. Code Ann. section 2329.66(A)(4)(b) and (d), which became effective September 29, 1979, permits a debtor to hold $1,500.00 worth of household goods exempt. Ohio Rev. Code Ann. section 2329.66(B), which was effective from November 16, 1970 to September 28, 1979, permitted a debtor to hold $600.00 of household goods exempt.