**In re Edward Milton ARMSTRONG, a/k/a Milton Armstrong, Debtor.**

**APEX OIL COMPANY, Appellant,**

v.

**Doris I. TIMS, Appellee.**

**No. 84–1024.**

United States District Court, W.D. Tennessee, E.D.

Jan. 10, 1986.

W. Rowlett Scott, of Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for Apex Oil Co.

George Googe, Jackson, Tenn., for Doris I. Tims.

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

TODD, District Judge.

This is an appeal from a decision of the Bankruptcy Court in the case of Edward Milton Armstrong. The scope of review in this appeal is determined by Rule 8013 of the Rules of Bankruptcy Procedure, which requires the court to accept the bankruptcy court's findings of fact unless clearly erroneous. Under Rule 8013, the district court is not bound by conclusions of law of the bankruptcy court. *In re Day,* 4 B.R. 750 (S.D.Ohio 1980), *appeal dismissed,* 633 F.2d 217 (6th Cir.1980). *See also In re*

*Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980).

The facts of this case, as found by the bankruptcy court, are relatively simple. On April 1, 1978, Coleman L. Tims and his wife, Doris I. Tims, the appellee in this case, entered into a lease purchase agreement with Edward Milton Armstrong and his wife, Sandra Armstrong. The subject of this agreement was a collection of trucks and trailers used by the Timses in their operation of the Tims Oil Company in Bolivar, Tennessee. The agreement stated that the trucks and trailers were collectively worth $51,225 and provided for monthly lease payments of $990 for a period of five years. At the end of this period, the Armstrongs could purchase the trucks and trailers for $1 if all lease payments had been made. The bankruptcy judge found that the lease was intended for security and that liens were perfected on each of the four trucks by notations on the titles of the trucks in accordance with Tennessee law. No financing statements were ever filed with respect to the trucks, the trailers, or any proceeds resulting from sale of the collateral.

The debtor in this case, Mr. Armstrong, began to experience financial difficulty, and was asked by his lender, the Hardeman County Bank, to liquidate his business. In early 1982, Mr. Armstrong entered into an agreement to sell the business that he had purchased from the Timses to two individuals for a lump sum of $117,500. This sale was made in accordance with the Tennessee Bulk Sale Act, Tenn.Code Ann. § 47–6–101—111 (1979). Pursuant to Tenn.Code Ann. § 47–6–106(4), the purchasers filed an interpleader action on February 17, 1982, in the Hardeman County Chancery Court and paid the $117,500 to the clerk of that court. The interpleader complaint stated that Mr. Armstrong's creditors had been notified of the sale and requested that the funds deposited be applied to satisfy any tax liens, the Timses' liens, and the bank's liens, in that order. Some time before the interpleader was filed, Mr. Tims died and Mrs. Tims succeeded to all of his rights under his will. As of February 17, 1982, Mrs.

Tims' liens on the trucks were still noted on the title certificates.

On May 20, 1982, the state court chancellor issued the following "Interlocutory Order:"

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the motor vehicle titles which are the subject matter of this civil action held by the defendant, Mrs. Doris Tims, should be delivered to the plaintiffs, that Milton Armstrong should endorse same as seller and that the lien of Coleman Tims as noted on the motor vehicle title be released so that the plaintiffs may register and secure tags for the legal operation of the vehicles but this release shall not be determinative of the validity of the said lien. The consideration paid for the vehicles, the business bulk act transfer and all other matters are reserved pending a final hearing in this civil action and the transfer of these titles to the plaintiffs is in no way determinative of the validity of the lien of the defendant, Mrs. Doris Tims.

Pursuant to this order, Mrs. Tims endorsed the title certificates, thereby releasing her liens on the vehicles. Although no objection to this order appears in the state court proceedings, Mrs. Tims testified during the bankruptcy proceedings in this case that her endorsement of the title certificates and release of the liens were against her wishes and over her protest.

Before the state court could render a final decision in the interpleader action, Apex Oil Company (Apex), the appellant in this case, and two other unsecured creditors of Mr. Armstrong filed an involuntary Chapter 7 bankruptcy petition against Mr. Armstrong on May 27, 1982. On November 17, 1982, the chancellor ordered that the debtor's bank be paid $69,038.15 in partial satisfaction of its claim against the debtor. After that payment, $60,000 remained in the control of the chancery court clerk, who had invested the funds in a deposit account. This $60,000 exceeded the total amount claimed by the remainder of the debtor's creditors, including both parties to this appeal.

On November 23, 1982, the bankruptcy court entered an order for relief pursuant to 11 U.S.C. § 303(h). An interim trustee was appointed and notice of the proceeding was given to the state chancery court on November 24, 1982. On February 4, 1983, an order was filed pursuant to 11 U.S.C. § 543, ordering the chancery court to account for, and transfer to the bankruptcy court, all funds of the debtor in its possession. At the time the funds were transferred to the bankruptcy court, the balance was $61,409.33. Because of the bankruptcy proceedings, a final hearing was never held in the state interpleader action. The purchasers of the debtor's business were not affected by this premature termination of the state case, however, as they had already received the debtor's property unencumbered by any liens.

Mrs. Tims filed a proof of claim in the bankruptcy proceedings, alleging that she had a secured claim in the amount of $12,188.57, representing the amount due for the balance of the lease payments. This claim was later amended by Mrs. Tims to $12,366.80. Apex also filed a proof of claim, alleging that it had an unsecured claim in the amount of $17,626.14 arising out of sale of fuel oil to the debtor. Apex objected to Mrs. Tims' claim, alleging that she was not a secured creditor with respect to any proceeds from the bulk sale and then successfully moved to be permitted to exercise the avoiding powers of a trustee under 11 U.S.C. § 544(a) because the trustee declined to do so. After notice and hearing, the bankruptcy court allowed Mrs. Tims' amended claim but denied her request for interest and fees under 11 U.S.C. § 506(b). In a brief order, the bankruptcy judge stated that Mrs. Tims did have perfected security interests in the proceeds of the bulk sales under the "unique facts and circumstances" of the case. Apex's motion for reconsideration was subsequently denied by the bankruptcy court and this appeal followed.

The only issue in this appeal is whether or not Mrs. Tims' interest in the funds deposited in the state interpleader action should prevail over that of the trustee in bankruptcy. Apex contends that any interest that Mrs. Tims may have is governed by the Uniform Commercial Code (UCC), as enacted by Tennessee, Tenn.Code Ann. § 47–1–101 et seq (1979). Because Mrs. Tims did not file financing statements covering proceeds of any sales of the motor vehicles on which she held properly perfected liens, Apex contends that any interests she may have in such proceeds are unperfected. Mrs. Tims contends that motor vehicle liens are excepted from the UCC by 9–302(3)(b) and that filings regarding proceeds from the sale of motor vehicles are therefore not necessary. Mrs. Tims also asserts that the UCC provisions regarding proceeds are not applicable because the debtor never received the proceeds. Finally, Mrs. Tims argues that the bulk sales provisions of the UCC and general equitable principles compel the result reached by the bankruptcy judge in this case.

Under 11 U.S.C. § 544(a), the trustee in bankruptcy has the rights and powers of a lien creditor at the time the case is commenced. As such a lien creditor, the trustee has a superior right to any unperfected security interests existing in the debtor's property. 9–301(1)(b); *Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc.*, 10 B.R. 632 (Bankr.E.D.Tenn. 1981), *aff'd*, 23 B.R. 743 (E.D.Tenn.1982).

The trustee's status as a hypothetical lien creditor extends only to property included in the estate, determined by 11 U.S.C. § 541. Property in which the debtor has any legal or equitable interest is included by 11 U.S.C. § 541(a)(1), even if liens on the property exceed the fair market value of the property. *In re Brown*, 734 F.2d 119, 123 (2d Cir.1984); *In re Curry*, 5 B.R. 282, 291–92 (Bankr.N.D.Ohio 1980), *aff'd*, 11 B.R. 716 (N.D.Ohio 1981), *rev'd on other grounds*, 698 F.2d 298 (6th Cir.1983).

Before the court can consider whether Mrs. Tims' interest in the proceeds of the bulk sale is superior to that of the trustee, it must first be determined that the funds are part of the debtor's estate. In its brief in this appeal, Apex contends that the bankruptcy court's order entered December 30, 1983, implied that the funds from the bulk sale were not part of the debtor's bankruptcy estate. This contention apparently derives from the court's statement that "The Debtor was not to receive any proceeds from the bulk transfer." Apex asserts that this statement is inconsistent with the court's order requiring the state chancery court to deliver the funds to the bankruptcy court, which Apex contends could have been entered only after finding that the proceeds were property of the debtor.

As noted by the bankruptcy court, whether or not property is included in the debtor's estate is a question of federal law. *In re Matto's, Inc.*, 9 B.R. 89 (Bankr.E.D.Mich 1981); *In re Gunder*, 8 B.R. 390 (Bankr.S.D.Ohio 1980). However, what interest a debtor has in particular property, if any, is a matter to be determined by state law. *In re Goff*, 706 F.2d 574, 578, n. 10 (5th Cir.1983); *In re Hall*, 5 B.R. 120 (Bankr.M.D.Tenn.1980). Once the debtor is found to have an interest in the property in question, it is automatically included in the estate unless otherwise provided by § 541.

In a case such as this, involving the deposit of proceeds from a bulk sale into state court in an interpleader action in which the creditors' claims far exceed the amount deposited, it would appear that the debtor-seller has no interest in the proceeds. The Sixth Circuit Court of Appeals has recently ruled, however, that mere payment of funds into court pursuant to an interpleader action does not result in a finding that the funds are no longer the property of the debtor. *NLT Computer Services v. Capital Computer Systems*, 755 F.2d 1253, 1263 (6th Cir.1985). Noting that Congress intended that secured creditors be protected by provisions of the

Bankruptcy Code instead of non-bankruptcy remedies, the court stated:

> The only purpose of the interpleader action was to determine the ownership of the funds, for the plaintiff therein made no claim to the money and did not dispute its legal obligation to pay. Therefore, the interpleader court's only function was the same as that which is vested in the bankruptcy court under the Bankruptcy Code, that is, to determine the relative priority of competing claims to the fund."

755 F.2d at 1263. Even though *NLT Computer Services* can be distinguished from the present case in that there the lien in question was a federal tax lien, the reasoning of the *NLT Computer Services* applies. As in *NLT Computer Services*, the debtor in this case has made no claim to the proceeds of the sale and has not disputed his legal obligation to pay the creditors in the interpleader action. As noted by the *NLT Computer Services* court, the interpleader action here would have served only to determine the relative priorities of the parties to that action. Although this function may properly be performed by a state court, once proceedings in bankruptcy begin, the federal proceedings take precedent. *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). This court finds, therefore, that the proceeds from the bulk sale were property of the debtor at the commencement of the bankruptcy proceedings and thus were properly included in the bankruptcy estate.

■ Having determined that the funds were properly included in the debtor's estate, Mrs. Tims' interest in the funds can now be analyzed. Mrs. Tims' claim to part of the funds stems from her interests in the trucks leased to the debtor. Although the Timses and the debtor did not execute a security agreement with respect to the trucks, the bankruptcy court found that the lease was intended for security. Based upon the provisions of the lease, this finding was not clearly erroneous. *Cf. In re Coors of the Cumberland, Inc.*, 19 B.R. 313 (Bankr.M.D.Tenn.1982). Section 9–102(1)(a) provides that Article 9 applies to any transaction intended to create a security interest. Accordingly, Mrs. Tims is bound by Article 9, especially 9–301, providing that an unperfected security interest is subordinate to the rights of a lien creditor, the status given to the trustee in bankruptcy by 11 U.S.C. § 544(a). If Mrs. Tims' asserted interest in the proceeds of the bulk sale is to prevail over that of the trustee, it must have been perfected prior to commencement of the bankruptcy proceedings.

■ With respect to a motor vehicle in Tennessee not held as inventory, perfection of a security interest is accomplished by notation of a lien on the vehicle's certificate of title. 9–302(3), (4), Tenn.Code Ann. § 55–3–125 (1980); *Still v. Commerce Union Bank*, 1 B.R. 99 (Bankr.E.D.Tenn. 1979). Mrs. Tims' security interests in the trucks were perfected in 1979 when title certificates were issued to the debtor with notations of Mr. Tims' liens on the certificates. As found by the bankruptcy court, these interests were still perfected on the date the state interpleader action was filed as the liens had not been released by endorsement on the title certificates.

If bankruptcy proceedings had intervened at this point, it is clear that Mrs. Tims' perfected security interests in the trucks would have prevailed over any interest of the trustee. This case is muddled, however, by the effect of the state court's order, requiring Mrs. Tims' to endorse the title certificates, thereby releasing her security interests in the trucks. Principles of equity alone would appear to compel this court to find that Mrs. Tims' interest in the proceeds of the bulk sale is superior to that of the trustee, regardless of whether or not she had perfected security interests in the proceeds of any sales of the trucks. However, because this court finds that Mrs. Tims did have perfected security interests in the proceeds of the bulk sale, it is not necessary to rely on vague equitable principles to decide this case.

■ A secured party's interest in proceeds is governed by 9–306. No case interpreting Tennessee's version of the UCC has

been found involving claims to the proceeds of a motor vehicle that was subject to a properly perfected security interest. Professor Gilmore, in his treatise on security interests in personal property, states that even in jurisdictions that have adopted certificate of title statutes, "the substantive provisions of Article 9 ... continue to govern the security transaction." G. Gilmore, *Security Interests in Personal Property*, § 20–8, at 577 (1965). Furthermore, opinions from jurisdictions that have considered the issue indicate that security interests in proceeds of motor vehicles subject to certificate of title statutes are governed by the UCC, even though liens on such motor vehicles can only be perfected by notations on title certificates in those jurisdictions. *See, e.g., Security Savings Bank v. United States*, 440 F.Supp. 444 (S.D.Iowa 1977); *In re Charlie Bisang Chrysler-Plymouth, Inc.*, 24 B.R. 350 (Bankr.N.D.Ohio 1982), *aff'd*, 37 B.R. 604 (N.D.Ohio 1983), *In re Czebotar*, 5 B.R. 379 (Bankr.E.D.Wash. 1980). In order to promote uniformity,[1] this Court ·adopts the holdings of these courts and finds that claims to the proceeds of a motor vehicle are governed by the UCC.

Subsection (2) of 9–306 provides that a security interest in collateral continues in any identifiable proceeds of sale or other disposition of the collateral. If the security interest in the collateral was perfected, 9–306(3) gives the secured party an automatic perfected security interest in the proceeds until "ten (10) days after receipt of the proceeds by the debtor." In order to be continuously perfected, a filed financing statement covering the original collateral must also cover proceeds or the security interest in the proceeds must be perfected before the end of the ten day period. 9–306(3). Finally, 9–306(4) provides special rules for use when insolvency proceedings involving the debtor are commenced.

■ On the date of the bulk sale, February 17, 1982, Mrs. Tims had perfected security interests in the trucks. As such, she had security interests in any identifiable proceeds of the sale that were deemed automatically perfected by 9–306(3). The proceeds in this case consisted of money that was deposited in a special account by the state chancery court. It should be noted that the debtor did not receive the money at any time and that he had no control over the deposit account. No commingling with other funds of the debtor occurred and the court finds that the proceeds from the sale of the trucks were identifiable, thereby giving Mrs. Tims perfected security interests in the proceeds. Because the debtor never received the proceeds, the automatic perfection granted by 9–306(3) never ceased.[2]

Giving a secured party continued perfection of a secured interest in proceeds of the original collateral until 10 days after the proceeds are received by the debtor is consistent with the purpose of perfection—to give notice to all the world of the creditor's interest in the collateral, or in the case of a sale of the collateral, its proceeds. *See In re Ault*, 6 B.R. 58, 65 (Bankr.E.D.Tenn. 1980). Third parties who contemplate extending credit on the basis of proceeds from collateral subject to a perfected security interest do so at their own risk when the debtor has never received the proceeds. This is especially true for cash proceeds, in which a security interest may be perfected only by the creditor taking possession. *See First State Bank v. Morristown Lincoln-Mercury, Inc.*, 27 B.R. 801 (Bankr.E.D. Tenn.1983).

■ Finding that Mrs. Tims had a perfected security interest in the funds held

---

1. *See* 1–103; *United States v. Burnette—Carter Co.*, 575 F.2d 587, 590 (6th Cir.), *cert. denied*, 439 U.S. 996, 99 S.Ct. 596, 58 L.Ed.2d 669 (1978).

2. Although the 10 day period of 9–306(3) normally commences on the date of sale of the collateral, neither 9–306(3) nor the official comment to the section require that the period begin then. In fact, the plain wording of 9–306(3) requires receipt of the proceeds *by the debtor* before the 10 day period starts. As noted above, the debtor in this case never received the proceeds, which were deposited directly into the state court by the purchasers of the collateral.

by the state court does not decide this case, however. The commencement of insolvency proceedings triggers operation of 9–306(4), dealing with the types of proceeds in which a party with a perfected security interest in proceeds continues to be perfected. Apex contends that even if Mrs. Tims is found to have a perfected security interest in the proceeds of the sale, her interest is limited by 9–306(4)(d)(ii) to the amount received by the debtor in the ten days preceeding commencement of the bankruptcy proceedings. Since the proceeds of the bulk sale were deposited into state court approximately two months before the bankruptcy petition was filed and because no funds were received by the debtor during the ten day period preceeding the filing, Apex contends that Mrs. Tims does not have a perfected security interest in the proceeds. Because of the express wording of 9–306(4)(d), this argument is without merit. That subpart only applies with respect to "cash and bank accounts *of the debtor*" and was intended to replace methods of tracing funds in commingled accounts provided by state law. J. White & R. Summers *Handbook of the Law Under the Uniform Commercial Code* § 24–6, at 1013 (2d ed. 1980). As noted, no commingling occurred in this case and the account in which the funds were placed was an account created by the state court solely for these funds. Section 9–306(4)(d) thus has no application in this case. *See also In re Security Aluminum Co.*, 9 U.C.C.Rep. Serv. 47 (Bankr.E.D.Mich.1971).

Subpart (b) of 9–306(4) appears to deal more directly with a case of this type and provides that a party with a perfected security interest in proceeds remains perfected with respect to "identifiable cash proceeds in the form of money which is not commingled with other money or deposited in a bank account prior to the insolvency proceedings." 9–306(4)(b). As stated above, the proceeds in this case are identifiable in that the debtor never had possession of the funds and the funds in the deposit account were derived solely from the bulk sale. The fact that the interest claimed by Mrs. Tims is only a part of the

funds does not make the funds any less identifiable. No commingling with other money of the debtor has occurred. Although the funds were deposited in an account prior to the insolvency proceedings, this court construes 9–306(4)(b) to refer to an account of the debtor, not one created by a court solely for the purpose of holding funds in an interpleader action pending distribution to the claimants. *See also* R. Anderson, *Anderson on the Uniform Commercial Code* § 9–306:7, at 304 (2d ed. 1971).

Further support for finding that Mrs. Tims has a perfected security interest in the proceeds of the bulk sale can be found in the 1972 version of 9–306(4)(a), which has been enacted by the Tennessee legislature and became effective January 1, 1986. Act of May 21, 1985, ch. 404, § 17, 1985 Tenn.Pub. Acts (codified at Tenn.Code Ann. § 47–9–306(4)(a) (Supp.1985)). As amended, 9–306(4)(a) provides that a perfected security interest in proceeds remains perfected in the event of insolvency with respect to "identifiable non-cash proceeds and in separate deposit accounts containing only proceeds." Tenn.Code Ann. § 47–9–306(4)(a) (Supp.1985). The deposit account created by the chancery court contained only proceeds from the bulk sale. This subpart of 9–306(4), and subparts (b) and (c), all provide that a secured party with a perfected security interest in proceeds remains perfected in the event of insolvency in funds not commingled by the debtor. *Anderson, supra*, § 9–306:15, at 309–10. Although the amended version of 9–306(4)(a) is not controlling in this case due to its effective date, the adoption of it by the Tennessee legislature is indicative of the intent in which 9–306 should be construed, that a secured party with a perfected security interest in proceeds remain perfected with respect to identifiable proceeds of his collateral.

Based on the foregoing analysis of the UCC as enacted in Tennessee, this court finds that Mrs. Tims had a perfected security interest in a part of the proceeds from the bulk sale of the debtor's business and

affirms the bankruptcy court's decision to allow her claim.

IT IS SO ORDERED.