In re Roger L. REISINGER, Individually and t/d/b/a McLinn Auto Body Supply.

Samuel P. McCOLLUM, Jr., Appellant,

v.

Roger L. REISINGER, Individually and t/d/b/a McLinn Auto Body Supply, and Commerce Bank, Appellees.

Bankruptcy No. 1–91–00326.

Civ. A. No. 1:CV–92–1203.

United States District Court, M.D. Pennsylvania.

Oct. 30, 1992.

David A. Wion, Wion, Zulli & Seibert, Harrisburg, Pa., for Samuel P. McCollum, Jr.

Charles J. DeHart, III, Wion, Zulli and Seibert, Harrisburg, Pa., for Roger L. Reisinger, individually and dba McLinn Auto Body Supply.

Lloyd R. Persun, Karen W. Connelly, Mette, Evans and Woodside, Harrisburg, Pa., for Commerce Bank.

Lawrence G. Frank, pro se.

## MEMORANDUM

CALDWELL, District Judge.

We are considering an appeal from the Order of the U.S. Bankruptcy Court dated July 1, 1992. We have jurisdiction under 28 U.S.C. § 158.

### I. Background

On February 13, 1991, debtor Roger Reisinger, both individually and as sole proprietor of McLinn Auto Body Supply, voluntarily filed a petition in bankruptcy.

Reisinger had purchased the business from appellant Samuel McCollum, 40 per cent was acquired in 1982 and the remainder in 1985. McCollum hoped to fund his retirement with the proceeds of the sale. The 1985 agreement was memorialized in an installment note requiring Reisinger to pay McCollum $118,200 as consideration for the 60 per cent of the business purchased in 1985. On October 18, 1985, McCollum filed a financing statement in the office of the Secretary of the Commonwealth securing "[a]ll inventory, equipment, supplies, accounts receivable and proceeds thereof."

In July, 1986, Reisinger sought and received additional financing for his business from appellee Commerce Bank ("Commerce"). On July 26, Reisinger executed two notes promising to repay to Commerce a $90,000 loan and any funds borrowed against a $25,000 line of credit. Reisinger signed a security agreement giving Commerce a security interest in "all accounts receivable, inventory, machinery and equipment." Commerce perfected its security interest by filing a financing statement in the office of the Secretary of the Commonwealth on July 25, 1992. According to 13 Pa.Cons.Stat.Ann. § 9401(a)(3) (Purdon 1984 and supp. 1992), perfection of a security interest in accounts receivable and in proceeds requires filing *both* in the office of the Secretary of the Commonwealth and in the office of the prothonotary of the county in which the debtor's business is located. Commerce accordingly filed a financing statement in the office of the prothonotary of Dauphin County, Pennsylvania, at 2:23 p.m. on July 25, 1992. McCollum, apparently having become aware of his failure to file in both required offices, filed a financing statement in the county office that same afternoon, one minute before Commerce. Both parties have stipulated that, at the time it filed its financing statements, Commerce was aware of McCollum's security interests.

A financing statement has a life of five years, after which it must be extended by filing of a continuation statement in the appropriate office. 13 Pa.Cons.Stat.Ann. § 9403(b). Reisinger filed his bankruptcy petition in February, 1991, more than five years after McCollum filed with the Commonwealth but less than five years after he filed with the county. McCollum had failed to file a continuation statement with the Commonwealth in October, 1991, five years after he filed his original financing statement. We must consider two issues, the more substantive of which is what effect McCollum's failure to file a continuation statement with the Commonwealth has on the priority of his interests in the collateral.

On April 30, 1991, Commerce requested of the Bankruptcy Court relief from the automatic stay imposed in bankruptcy proceedings so that it could foreclose on the Reisinger collateral. On July 1, 1992, the Bankruptcy Court granted the relief, concluding that Commerce had a prior secured interest in the collateral as of the date of the bankruptcy petition. Three weeks later, on July 24, 1992, upon a motion by Commerce, the Bankruptcy Court issued an order directing the trustee to distribute to Commerce the proceeds of Reisinger's accounts receivable. On July 30, 1992, McCollum moved for an extension of time in which to file an appeal of the July 1 order and for a stay of execution of the July 24 order. The extension was granted and the stay was denied. It is in this posture that the case comes before us on appeal.

## II. *Mootness*

Appellee argues initially that the appeal is moot and should, therefore, be dismissed. The primary basis for this argument is that the Bankruptcy Court refused to stay the foreclosure and that the foreclosure has already taken place.

Appellee cites *In Re Kahihikolo*, 807 F.2d 1540 (11th Cir.1987), for this proposition. We believe *Kahihikolo* is distinguishable, but instructive. In that case, the collateral was an automobile. The bankruptcy court lifted the automatic stay and the district court affirmed. Before the appeal reached the Eleventh Circuit, the automobile was sold at auction. The Court

of Appeals ruled that the case was moot. The court quoted its predecessor court:[1]

> Although as a general rule a party need not seek a stay of a lower court's judgment in order to protect its right to appeal, the "consequence of failing to obtain a stay is that the prevailing party may treat the judgment of the district court as final...." *Thus, in the absence of a stay, action of a character which cannot be reversed by the court of appeals may be taken in reliance on the lower court's decree. As a result, the court of appeals may become powerless to grant the relief requested by the appellant.* Under such circumstances, the appeal will be dismissed as moot.

807 F.2d at 1542 (citations omitted and emphasis added). The rationale for the dismissal was that the judicial sale had already occurred and that it would be improper for the court to harm the innocent purchaser by ordering the sale rescinded. *Id.* at 1542. Appellee also directs us to *In Re Highway Truck Drivers and Helpers Local Union #107*, 888 F.2d 293 (3d Cir. 1989), in which the court cites *Kahihikolo*. In that case, the Third Circuit quoted the language excerpted above. It also noted that "[w]e have recognized, in the context of bankruptcy proceedings, that '[g]enerally, an appeal will be dismissed as moot when events occur during the pendency of the appeal which prevent the appellate court from granting any effective relief.'" *Id.* at 297. Again, the import was that there was no appropriate way for the appellate court to grant appellant's relief.

The case at bar is distinguishable. Appellee has noted in its brief

> In the instant case, no sale was necessary because the Collateral was cash. Commerce as secured party merely foreclosed its security interest therein by applying the $46,707.16 in cash to Reisinger's defaulted indebtedness. No sale was needed to liquidate the collateral or to fix its value as cash has a readily ascertainable value.

Because the collateral was cash, the basis underlying the *Kahihikolo* ruling is not invoked; namely, that a sale can not be easily rescinded without unfairness to the innocent purchaser. Were appellant's remedy to be granted, Commerce would need only return the $46,707.16. Cash is fungible. That being the case, the foreclosure argument fails to demonstrate that the matter is moot.

■ Appellee also contends that the matter is moot because there has been no appeal of the Bankruptcy Court order of July 24, 1992, directing distribution of the collateral. We believe this assertion to be without merit. While it is true that the appeal does not ask us to review that order, we believe the order was essentially procedural, the purpose being to effectuate the July 1, 1992, order. A reversal of the July 1 order would effectively reverse the July 24 order. We can not conclude that this issue is a barrier to our considering the substance of this appeal.

### III. *Priority Among the Parties*

■ Appellee is correct that this is a case of first impression. The facts point to a unique situation, namely, an improper filing at the time of bankruptcy caused by the failure to file a continuation statement at one of two required places. Our task is to determine whether appellee or appellant properly claimed priority at that time.

Two provisions of the Uniform Commercial Code have relevance to our determination, 13 Pa.Cons.Stat.Ann. §§ 9401(b) and 9403(b). Section 9401(b) describes the effect of an improper filing.

> **(b) Effect of partially valid filing.**—A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any of the collateral as to which the filing complied with the requirements of this division and is also effective with regard to collateral covered by the financing statement against any person who has knowledge

---

**1.** The predecessor to the Eleventh Circuit is the old Fifth Circuit. The Fifth Circuit split in 1981, creating the Eleventh Circuit and the new Fifth Circuit.

of the contents of such financing statement.

Section 9403(b) describes the need for continuation statements and the effect of a lapse of a financing statement.

**(b) Duration of effectiveness of filing in general.**—Except as provided in subsection (e), a filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse.

The Bankruptcy Court and appellee rely on *Matter of Reda, Inc.*, 54 B.R. 871 (Bankr.E.D.Ill.1985) for the conclusion that the UCC mandates that Commerce had priority. There the court noted as follows:

Sciacqua's argument, however, misses the point. Although her security interest may have been perfected at one time by virtue of § 9401(2) of the Illinois statutes [the equivalent of Pennsylvania's § 9401(b)] and have been effective against the Bank by virtue of the Bank's knowledge, it lapsed and became junior to the Bank's perfected security interest on November 29, 1983. The lapse provision is § 9–403 [Pennsylvania's § 9403]. While knowledge may be relevant under § 9–401(2), the Bank's knowledge of Sciacqua's security interest is irrelevant for purposes of § 9–403.

*Id.* at 878 (citations omitted). *Reda* involved different facts from those of the instant case. In *Reda*, the first secured party, Sciacqua, needed only to file her financing statement in one place, the office of the Illinois secretary of state. Instead, she filed with the Cook County recorder of deeds. Five years later, she failed to file a continuation statement and her financing statement, therefore, lapsed. A bank had properly filed a financing statement with the state in the intervening years, and the bankruptcy court held that the bank gained priority when Sciacqua's financing statement lapsed, even though the bank admitted to knowledge of the Sciacqua interest. In the case at bar, McCollum's financing statement had to be filed in two places, and it remained filed in one at the time of the bankruptcy petition. In delineating the distinction, it is helpful to review the parties' positions on the day the bankruptcy petition was filed. Commerce had two financing statements filed, one with the Commonwealth and one with the county. McCollum had one financing statement *currently* filed with the county. This resembles the position of a party who initially files improperly, but who would be given priority under § 9401(b) if the error were in good faith and the second creditor had knowledge of the first creditor's interest. In *Reda*, the same focus reveals that the first creditor had only one financing statement to file and it had lapsed; there was no other financing statement on file and the parallel to the good faith/actual knowledge exception does not exist.

The purpose of a financing statement is to give notice to all the world of the prior security interest. *In Re Armstrong*, 56 B.R. 781, 787 (W.D.Tenn.1986). It would seem to follow that a party who already has actual notice would not need the constructive notice afforded by a financing statement. We believe this reasoning underlies § 9401(b). Given this policy and the parallel between the instant situation and the situation suggested by § 9401(b), there is a compelling logic to appellant's position. We can not, however, end the analysis there.

While we have drawn a parallel between McCollum's position and the position of a party contemplated by § 9401(b), we also find a critical difference. Section 9401(b) calls for a good faith error as to the proper place of filing. McCollum originally made such an error, but corrected it in July of 1986 when he filed with the prothonotary of Dauphin County. He knew that he needed to file in both places. When his financing statement with the Commonwealth lapsed, it was not an error as to the proper place to file, but an error as to the need for a continuation statement. We do not, however, find a provision in § 9403, the section describing continuation statements, that allows a court to forego that requirement when there is an error, even if the second creditor *knows* of the first credi-

tor's security interest. Given that the purpose of the financing statement is to give other creditors at least constructive notice of the prior interest, an "actual knowledge" provision would seem logical, but we can not supplement the plain words of the statute. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). We conclude that Commerce had priority at the time the bankruptcy petition was filed.